# EXHIBIT A

**SUMMONS**
**(CITACION JUDICIAL)**

SUM-100



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

JUL 30 2021

CLERK OF THE SUPERIOR COURT

**NOTICE TO DEFENDANT:** PROGRESSIVE CASUALTY INSURANCE
**(AVISO AL DEMANDADO):** COMPANY, TAMER ABULEBDA and DOES 1 TO
100

**YOU ARE BEING SUED BY PLAINTIFF:** AHMED HALEEM
**(LO ESTA DEMANDANDO EL DEMANDANTE):**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of California, County of Alameda
24405 Amador Street
Hayward, California 94544

CASE NUMBER:
(Número del Caso):
HG21107078

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Gene J. Goldsman, Esq.
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Law Offices of Gene J. Goldsman
501 Civic Center Drive West, Santa Ana, CA 92701                                     (714) 541-3333

DATE:           JUL 30 2021           Clerk, by          Esther Crema          , Deputy
(Fecha)                               (Secretario)                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [X] on behalf of (specify): PROGRESSIVE CASUALTY INSURANCE COMPANY

under: [ ] CCP 416.10 (corporation)              [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)       [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
       [X] other (specify): CCP 415.95 (business organization, form unknown)
4. [ ] by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Western Pro & Sons, Mfg.etc.

Page 1 of 1

CIV-050

**-DO NOT FILE WITH THE COURT-**
**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* Gene J. Goldsman, Esq. LAW OFFICES OF GENE J. GOLDSMAN 501 Civic Center Drive West Santa Ana, CA 92701  TELEPHONE NO.: (714)541-3333  ATTORNEY FOR *(name):* Ahmed Haleem | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS: 24405 Amador Street
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

PLAINTIFF: Ahmed Haleem
DEFENDANT: Progressive, et al.

| STATEMENT OF DAMAGES (Personal Injury or Wrongful Death) | CASE NUMBER: HG21107078 |
|---|---|

To *(name of one defendant only):* Progressive
Plaintiff *(name of one plaintiff only):* Ahmed Haleem
seeks damages in the above-entitled action, as follows:

**1. General damages**

| | | AMOUNT |
|---|---|---|
| a. ☒ | Pain, suffering, and inconvenience........................................................ $ | 750,000.00 |
| b. ☒ | Emotional distress................................................................................. $ | 750,000.00 |
| c. ☐ | Loss of consortium ............................................................................... $ | |
| d. ☐ | Loss of society and companionship *(wrongful death actions only)*................. $ | |
| e. ☐ | Other *(specify)* _____ $ | |
| f. ☐ | Other *(specify)* _____ $ | |
| g. ☐ | Continued on Attachment 1.g. | |

**2. Special damages**

| | | |
|---|---|---|
| a. ☒ | Medical expenses *(to date)*.................................................................. $ | 100,000.00 |
| b. ☒ | Future medical expenses *(present value)* ............................................. $ | 250,000.00 |
| c. ☐ | Loss of earnings *(to date)*.................................................................. $ | |
| d. ☐ | Loss of future earning capacity *(present value)*.................................... $ | |
| e. ☒ | Property damage.............................................................................. $ | 40,000.00 |
| f. ☐ | Funeral expenses *(wrongful death actions only)* ................................... $ | |
| g. ☐ | Future contributions *(present value)* *(wrongful death actions only)* ........ $ | |
| h. ☐ | Value of personal service, advice, or training *(wrongful death actions only)* ...... $ | |
| i. ☐ | Other *(specify)* _____ $ | |
| j. ☐ | Other *(specify)* _____ $ | |
| k. ☐ | Continued on Attachment 2.k. | |

3. ☒  **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* $ 500,000.00 when pursuing a judgment in the suit filed against you.

Date: 12.20.2021

Gene J. Goldsman, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-050 [Rev. January 1, 2007]

**STATEMENT OF DAMAGES**
(Personal Injury or Wrongful Death)

Code of Civil Procedure, §§ 425.11, 425.115
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com



Gene J. Goldsman, Esq. - SBN 76554
LAW OFFICES OF GENE J. GOLDSMAN
501 Civic Center Drive West
Santa Ana, CA 92701-4059
(714) 541-3333/FAX (714) 541-0456
Attorneys for Plaintiff, AHMED HALEEM

ENDORSED
FILED
ALAMEDA COUNTY

JUL 30 2021

CLERK OF THE SUPERIOR COURT

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA – HAYWARD JUSTICE CENTER

AHMED HALEEM,

    Plaintiffs,

v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY, TAMER
ABULEBDA and DOES 1 TO 100,

    Defendants.

Case No.:
Assigned: HG21107078
Dept.:

1. BREACH OF THE COVENANT OF
   GOOD FAITH AND FAIR DEALING IN
   TORT (BAD FAITH);
2. BREACH OF CONTRACT / BREACH OF
   THE COVENANT OF GOOD FAITH AND
   FAIR DEALING IN CONTRACT;
3. PROMISSORY FRAUD / DECEIT

Plaintiffs, AHMED HALEEM, hereby alleges against Defendants PROGRESSIVE

CASUALTY INSURANCE COMPANY, TAMER ABULEBDA and Does 1 to 100, as follows:

COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

1          **FIRST CAUSE OF ACTION**

2    **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

3          (As against, PROGRESSIVE CASUALTY INSURANCE COMPANY, hereafter

4          referred to as "PROGRESSIVE"; TAMER ABULEBDA, Hereafter referred to as

5          "ADJUSTER" and Does 1 to 100)

6    1.    Plaintiff is and at all times mentioned herein, was an individual residing in the County of

7    Alameda, State of California.

8    2.    Plaintiff is informed and believes and thereon alleges that Defendant PROGRESSIVE was at all

9    times herein mentioned, doing business, form of organization unknown, in the County of

10   ALAMEDA, State of California as duly licensed insurers doing business in the State of California.

11   3. Plaintiff is informed and believes and thereon alleges that Defendant TAMER ABULEBDA

12   ("ADJUSTER") was a individual domiciled in State of California, County of Alameda.

13   3.    Plaintiff is genuinely ignorant of the true names and capacities of Defendants, sued herein as

14   Does 1 through 100, and therefore sues said Defendants by such fictitious names. Plaintiff will amend

15   this Complaint to allege the true names and capacities when the same have been ascertained. Plaintiff

16   is informed and believes and thereon alleges that each fictitiously named Defendant is responsible in

17   some manner for the acts or omissions alleged herein and Plaintiff's injuries as herein alleged were

18   proximately caused by those acts or omissions.

19   4.    At all times herein mentioned, each of the Defendants was the agent, servant, contractor  or

20   employee, joint venture, alter ego, alternative entity, successor, predecessor or alter ego of each of the

21   remaining Defendants, and in doing the things hereinafter alleged was acting within the course and

22   scope of such agency or employment, and/or in the furtherance of a partnership, joint venture, co-

23   conspiracy or under some other legal theory and for the benefit of each and every other defendant.

24   5.    The conduct, acts, and omissions of Defendants, and each of them, as described in this

25   complaint, was undertaken by Defendant PROGRESSIVE 's officers or managing agents, including

26   Defendant TAMER ABULEBDA "ADJUSTER" identified as DOES 1 to 100, who were responsible

27   for claims operations, underwriting, communications, investigations, and decisions. The conduct of

28   the managing agents and individuals was therefore undertaken on behalf of Defendant

---

2
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

1  PROGRESSIVE. Further, Defendants, and each of them, had advance knowledge of the actions and
2  conduct of those individuals, whose actions and conduct were ratified, authorized, and approved by
3  managing agents and by other corporate officers, directors, or managing agents whose precise
4  identities are unknown to Plaintiff at this time. Plaintiff thus identifies and designates those
5  individuals as DOES 1 to 100.
6  6.    Defendant, PROGRESSIVES 'S corporate headquarters is located out of the State of California,
7  but has agency offices in ALAMEDA for selling policies of indemnity insurance and does sell such
8  policies in and for vehicles and customers in ALAMEDA County, California, and is an out of state
9  insurance company registered in California to do business.
10  7.    Prior to October 31, 2018, Ahmed Haleem purchased an insurance policy for automobile
11  insurance, 925092094, including uninsured and underinsured motorist benefits from Defendants, and
12  each of them, including Haleem, which policy was in effect on the date of the accident, and had been
13  in effect prior to the October 31, 2018 accident, and under which Plaintiff was an insured person.
14  8.    The force and effect of said contract with Defendants, and each of them, required the payment of
15  an underinsured motorist benefits for a total amount for one person of up to $100,000.00 damages.
16  All premiums due under said contract were paid to Defendants, and each of them, at all relevant times
17  herein, and all material obligations thereunder were performed by or on behalf of Plaintiff.
18  9.    Defendant, PROGRESSIVE, represented in the aforementioned contract of insurance that
19  Defendants, and each of them, would provide compensation to an insured, including Plaintiff, in the
20  event of a loss caused by a uninsured or underinsured motorist or hit and run driver to the same extent
21  as an uninsured motorist would be liable to plaintiff, that is up to a total limit of $100,000.00.
22  10.    On October 31, 2018 Plaintiff was driving his motor vehicle on California Hwy 680 and 580
23  junction interchange City of Dublin, County of Alameda, State of California 94588. On that date
24  plaintiff was struck by a vehicle driven by an underinsured motorist, one JESUS MAR MELGOZA
25  and owned by JOEL MELGOZA (hereinafter called "JESUS" and "JOEL") as he failed to yield
26  struck Plaintiff while making an unsafe lane change, proximately causing Plaintiff severe and
27  permanent bodily injuries.  JESUS AND JOEL had no insurance policy covering this collision.
28  Thereafter, on or about December 23, 2020 $50,000 of the Policy was tendered, Plaintiff, settled with

3<br>
COMPLAINT<br>
Haleem v. Progressive Casualty Insurance Company, et al.

1  his insurance carrier for full uninsured motorist single person's policy limits of $50,000.00. Plaintiff

2  thus exhausted the half the policy.

3  11.    On or about December 11, 2020, Plaintiff's attorney notified Progressive by letter that the firm

4  was representing AHMED HALEEM and provided true copies of medical documentation.

5  12.    All the way until the time of settlement, Plaintiff, through his counsel, sent to PROGRESSIVE

6  'S employees and its employee including TAMER ABULEBDA, and counsel reputable, and

7  convincing medical evidence of Plaintiff's personal injuries proximately caused by the October 31,

8  2018 motor vehicle collision by the uninsured motorist. This evidence included detailed medical

9  reports and assessments, bills, and diagnostic test results from extremely reputable and respected

10  medical professionals within the California medical community. The medical evidence given to

11  Defendants, and each of them, showed that Plaintiff had among other injuries, tinnitus that left

12  Plaintiff with permanent chronic ringing in the ears as well as chronic lower back issues and related

13  costs and expenses, a great possibility of lifetime pain. All of Plaintiffs treating physicians agreed on

14  the seriousness of the condition which was proximately caused by the underinsured motorist.

15  13.    All through the case, and continuing through the settlement, Defendants, and each of them,

16  unjustifiably, negligently, and in bad faith refused and delayed in paying anything of said claim, by

17  failing to investigate properly and setting up false defenses and failed to settle

18  fairly and to pay the claim despite having been in a position to have obtained convincing knowledge

19  of the circumstances of the accident and Plaintiff's injuries, and there was no question of liability.

20  14.    It was clear early in the claims process that Plaintiff was deserving of some payment of any

21  amount of the policy at all, but rather than pay or tender an offer commensurate with his injuries,

22  Defendants, and each of them, tormented Plaintiff through litigation, proximately causing and

23  requiring him to go through the expense of thousands of dollars in litigation costs to his damage, in

24  addition to proximately causing him the anguish of litigation.

25  15.    Defendants, and each of them, in derogation of their duty to their policy holder, the Plaintiff,

26  refused to make a reasonable good faith offer given all the supporting medical evidence they

27  possessed. Defendant refused to provide Plaintiff with a good faith offer.

28

---

4
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

1   16.     Defendants, and each of them, breached their duty of good faith and fair dealing owed to
2   Plaintiff in the following respects:
3        a) Failing unreasonably and in bad faith to make a good faith offer and benefit payments to
4   Plaintiff at a time when Defendants, and each of them, knew that Plaintiff was entitled to those
5   benefits under the terms of the policy, and knowing the underinsured motorist was liable to Plaintiff
6   for any damages Plaintiff incurred as a result of the accident, and should pay a significant amount of
7   the policy and it was reasonably clear that the Plaintiff's damages were easily worth a significant
8   amount of the policy limits.
9        b) Unreasonably delaying payments to Plaintiff in bad faith, despite Defendants', and each of
10   them, knowledge that Plaintiff's claim for benefits under the policy was valid. Defendants, and each
11   of them, were fully aware that their liability to pay a significant amount of the available policy limits
12   was clear.
13        c) Failing reasonably and promptly to investigate and process Plaintiff's claim for benefits, in
14   that Defendants, and each of them, in the exercise of reasonable diligence, should have known that
15   Plaintiff was injured and damaged to a significant amount of the available policy limits benefits, and
16   that the underinsured motorist was liable to Plaintiff for any damages Plaintiff incurred as a result of
17   the accident.
18        d) Failing to make a good faith effort to obtain prompt, fair, and equitable settlement of
19   Plaintiff's claims for benefits after the liability of Defendants, and each of them, had become reasonably
20   clear, in that Plaintiff was an insured under the policy. Defendants, and each of them, well knew that
21   the underinsured motorist was liable for the accident and that Plaintiff's severe personal injuries clearly
22   exceeded the $100,000 underinsured policy and a significant amount of the available policy limits of
23   Plaintiff's insurance policy, and instead of paying the claim, went about building a false defense and
24   failed to make a good faith settlement to Plaintiff prior to the settlement when they could not claim
25   they did not have all of the Plaintiff's medical evidence.
26        e) Tormenting Plaintiff to go through the expense of thousands of dollars in litigation costs, in
27   addition to the mental anguish associated with the refusal to pay reasonable sums, and with subsequent
28

5
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

1  litigation, and further caused Plaintiff to incur extreme financial stress and anxiety because the benefits

2  due were required to assist Plaintiff during this time of medical and financial emergency.

3           f) Defendants, and each of them, have breached their duty of good faith and fair dealing owed

4  to Plaintiff by other acts or omissions of which Plaintiff is presently unaware, which will be shown

5  according to proof at time of trial.

6  17.     Had Defendants, and each of them, conducted a reasonable investigation of the claim,

7  Defendants, and each of them, would have learned, *inter alia*, that Plaintiff was injured by an "at fault"

8  underinsured motorist for which compensation was due to him for injuries to the extent of a significant

9  amount of the available policy limits. Instead Defendants, and each of them, did not ever make a

10  reasonable offer after a valid demand, and delayed and procrastinated at every opportunity. Defendant

11  never provided Plaintiff with a good faith offer or at any time during the UIM claim. These actions

12  were intentional and were undertaken in an effort to discourage Plaintiff from pursuing his claim for

13  damages in an attempt to deprive Plaintiff of the benefits due to him under his insurance policy.

14  18.   Plaintiff is informed and believes and upon such information and belief alleges that Defendants,

15  and each of them, in furtherance of their scheme to defraud and deprive Plaintiff of benefits under the

16  insurance policy, set up defenses based on dubious and unqualified orthopedic expertise.

17  19.     One of the reasons for denying Plaintiffs' claim for benefits without proper cause, when

18  Defendants, and each of them, knew such claims to be just, reasonable, and due Plaintiff under said

19  policy of insurance, was to place Plaintiff in the disadvantageous position of needing funds to support

20  himself while injured, thereby placing Plaintiff in a position wherein he would be forced to beg for,

21  and accept, an offer settling Plaintiff's claim for underinsured motorist benefits in an amount

22  substantially less than the true amount owed to Plaintiff under the terms of said policy of insurance.

23  20.     As a direct result of Defendants, and each of them, unreasonably delaying payments to

24  Plaintiff in bad faith, failing to reasonably and promptly investigate and process Plaintiff's claim

25  for benefits, and failing to make a good faith effort to obtain prompt, fair, and equitable

26  settlement of Plaintiff's claim for benefits without proper cause, Plaintiff was forced to wait for

27  payments due and was forced to proceed with a law suit in bad faith incuring the associated costs

28

Notice of Removal Exh. A 009

1    and emotional distress associated with such proceeding and was denied benefits under the policy

2    to which he was entitled in a time of medical and emotional need.

3    21.    As a proximate result of the unreasonable and bad faith conduct mentioned above, without

4    proper cause, Plaintiff has suffered economic and consequential damages in an amount to be

5    shown at trial. These damages include, but are not limited to, significant economic loss both as a

6    result of the subject incident and during the interim period while Defendants, and each of them,

7    were withholding benefits without proper cause; additional costs for health care providers; and

8    all other economic and general damages in a sum to be determined at trial.

9
10   22.    As a further proximate result of the wrongful conduct of Defendants, and each of them,

11   without proper cause, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to

12   Plaintiff's general damages in a sum to be determined at the time of trial.

13   23.    The conduct of Defendants, and each of them, described in this complaint of deliberately

14   and calculatingly failing to provide the compensation which they knew was due to Plaintiff,

15   scheming to conspire and defraud Plaintiff, and committing actual fraud against Plaintiff, and

16   further intentionally inflicting emotional distress upon Plaintiff, offering a settlement of half the

17   policy only when threatened with a bad faith suit and in light of compelling medical evidence

18   supporting that Plaintiff was entitled to the a significant amount of the available policy benefits,

19   while well knowing their policy holder and insured was entitled to policy limits, constitutes malice

20   and oppression under California Civil Code section 3294, in that it was done with the intent to vex,

21   injure, or annoy and with conscious disregard of the Plaintiff's rights, and deliberately in bad faith,

22   to deny him the benefits to which he was entitled under the policy. All the aforesaid acts were

23   performed in an effort to discourage Plaintiff from seeking the compensation due to him at a time

24   Defendants, and each of them, knew that the Plaintiff was financially vulnerable. Thus, Plaintiff

25   is entitled to punitive and exemplary damages in an amount appropriate to punish and make an

26   example of Defendants, and each of them.

27
28

7

COMPLAINT

Haleem v. Progressive Casualty Insurance Company, et al.

1   24.   Plaintiff has been required, in order to litigate his rights and prosecute this action, to retain

2   attorneys and incur attorneys' fees and litigation expense in an amount to be proved.

3   25.   Because of the refusal of Defendants, and each of them, to pay reasonable benefits, Plaintiff

4   was forced to expend additional attorney's fees, expert witness fees, and expenses.

5

6                              **SECOND CAUSE OF ACTION**

7      **BREACH OF CONTRACT / BREACH OF THE COVENANT OF GOOD FAITH**

8                              **AND FAIR DEALING IN CONTRACT**

9            (As Against **PROGRESSIVE; TAMER ABULEBDA** and DOES 1 to 100)

10  26.   Plaintiff hereby incorporates by reference all prior and subsequent paragraphs of this complaint

11  as if set forth in full herein.

12  27.   Plaintiff, by paying the premiums entered into the written auto insurance policy contract offered

13  him by Defendants, and each of them, prior to and on or about October 15, 2018. Plaintiff was

14  involved in an accident on or about October 31, 2018. Plaintiff retained counsel shortly thereafter, in

15  2018, related to the investigation and settlement of plaintiff's UIM/UM claim with defendants, and

16  each of them, in hopes to avoid UIM/UM arbitration.  Thereafter, plaintiff wrote and made a

17  UM/UIM claim with his insurance company 18-4466239, Defendant, Progressive.  Plaintiff engaged

18  in over a three-year period of cooperation with defendants, and each of them during 2018, 2019,

19  2020, and far into 2020 almost 2021.   During this time period, there were regular and numerous

20  letters and communication between plaintiff/Plaintiff's counsel and insurer including adjuster

21  TAMER ABULEBDA, for Defendant, Progressive.  Plaintiff provided many facts and evidence of

22  the accident occurrence, including evidence of vehicle "contact" from the underinsured driver which

23  would invoke plaintiff's UM/UIM insurance policy coverage for plaintiff.

24  28.   During 2018, 2019, and well into 2020, PROGRESSIVE and Defendant adjuster TAMER

25  ABULEBDA ignored and refused to pay in full, plaintiff's "no-fault" "medical –pay" money due him

26  under the plaintiff's PROGRESSIVE insurance policy after demand was made and medical bills were

27  sent to PROGRESSIVE.

28

---

8
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

29.   Plaintiff's demands for the significant remaining portion of the policy UM/UIM benefits were denied by PROGRESSIVE after a settlement of $50,000 UM driver policy, which was half the full policy.  Plaintiff was thereafter compelled to file a lawsuit against PROGRESSIVE and ADJUSTER in Bad Faith.

30.   At all times relevant herein, Plaintiff and other insureds under the insurance policy performed all material duties and obligations required under the insurance policy except those that were excused or discharged.  This included making all payments due to defendant, PROGRESSIVE, under the insurance policy.  Defendants and each of them, accepted policy premium payments from plaintiff and other insureds identified within the policy, made on behalf of plaintiff, as a named policy insured.

**31.   Defendants, and each of them, breached their obligations and covenant of good faith and fair dealing, in contract, under the insurance policy, including the breach of all of the insurance policy contract's express terms, implied at law terms and implied in fact terms, including all terms pursuant to *Insurance Code* section 11580.2 *et seq*., in the following manner:**

a)  By failing to conduct a reasonable, full, prompt, timely, thorough, and complete investigation with reasonable diligence into the facts and circumstances of the accident, injury and insurance claim made by Plaintiff throughout the years of 2018; 2019 and majority of 2020.

b)  By unreasonably delaying in processing and investigation of the UM/UIM claim 18-4466239 or paying UM/UIM benefits due to Plaintiff under the policy;

c)  By unreasonably delaying in processing and investigation of the no-fault medical payments benefits due to Plaintiff under the policy;

d)  By unreasonably failing to adequately communicate and negotiate a reasonable settlement agreement, thus breaching a contractual duty to discuss the claim to which the implied covenant of good faith and fair dealing in contract, properly attaches;

e)  By unreasonably investigating, delaying and denying Plaintiff's claim based on standards known by the insurer to be improper;

f)  By unreasonably failing to pay a prompt and reasonable settlement offer to Plaintiff when Defendants were in possession of sufficient evidence to support it and do such;

Notice of Removal Exh. A 012

1       g) By failing to settle and pay plaintiff's UM/UIM claim and no-fault medical payments

2   claim in a timely and prompt manner, and instead withheld payment of these claim benefits until

3   plaintiff had paid for a costly and unnecessary arbitration at defendants' insistence.

4       f) By doing each of the acts or omissions described within all other causes of action of this

5   complaint, which were contractual promises, duties and obligations by the insurance policy contract's

6   express terms, implied at law terms and implied in fact terms including *Insurance Code* section

7   11850.2, 790.03 and California law.

8       g) Subdivision (a) – through (f), and other obligations, duties and terms described and

9   referenced (that were violated), as described throughout this complaint, were in fact material terms of

10   the insurance policy contracts' **express terms, implied at law terms and implied in fact terms,**

11   including all terms pursuant to *Insurance Code* section 11580.2 *et seq.*

12   32.   Defendants, and each of them, failed to, and refused to conduct a reasonable, fair, timely and

13   thorough investigation into the facts and circumstances of the Plaintiff's UM/UIM claim asserted, but

14   instead wished to and did try to create new "facts," failed to consider the severe injuries suffered by

15   Plaintiff when in possession of a more than adequate mountain of plaintiff's good medical evidence

16   of injury and causation, from reputable physicians, to support the seriousness of Plaintiff's injuries,

17   wrongfully conspired to deny Plaintiff benefits due under the insurance policy; and offered no

18   reasonable settlement whatsoever beyond $50,000 when they knew the case was worth a significant

19   portion more than of the remaining $100,000 policy limits to relieve Defendants, and each of them,

20   from having to pay promptly, fairly and reasonably benefits under the insurance policy. As a

21   proximate result of the unreasonable, wrongful and bad faith conduct mentioned above, and by the

22   breach of said insurance policy contract, Plaintiff has suffered mental, physical, economic, and other

23   damages in an amount to be shown at trial. By engaging in the acts and omissions alleged throughout

24   this complaint, defendants, and each of them breached the insurance policy contract terms and the

25   contract's covenant of good faith and fair dealing, *in contract.*

26   33. As a direct and proximate result of the breach by Defendants, and each of them, of their

27   obligations under the insurance policy, Plaintiff has been damaged as follows:

28

10<br>COMPLAINT<br>Haleem v. Progressive Casualty Insurance Company, et al.

1    a) Plaintiff was forced to proceed with binding arbitration and incur the associated costs and

2  emotional distress associated with such proceedings, including attorneys and expert fees and he was

3  denied benefits due under the policy in a time of medical need, and physical pain.

4    b) Plaintiff was forced to suffer other economic and consequential damages as referenced

5  herein and throughout this complaint in an amount to be shown at trial.

6

7                              **THIRD CAUSE OF ACTION**

8                              **PROMISSORY FRAUD / DECEIT**

9  (*Civil Code* **Sections 1709; 1710(4)); *Miller v. National American Life Ins. Co. of California* (1976)**

10     **54 Cal App. 3d. 331; *Wetherbee v. United Ins. Co. of America* (1968) 265 Cal App. 2d. 932)**

11             (As Against **PROGRESSIVE; TAMER ABULEBDA** and DOES 1 to 100)

12  34.    Plaintiff hereby incorporates by reference all prior and subsequent paragraphs of this complaint

13  as if set forth in full herein.

14  35.    At the time Defendants, and each of them, entered in the Policy of Insurance Contract, with

15  Plaintiff as an insured, and each time they renewed the policy, Defendants, and each of them,

16  represented to the policy holders and beneficiaries within Defendants' standardized insurance policy

17  contract's express and implied terms, including plaintiff, with regard to underinsured / uninsured

18  motorists coverage, that they would do the following in the event of a claim:  that Defendants, and

19  each of them, would pay to the beneficiary sums that the hit and run or underinsured or uninsured

20  motorist would be obligated to pay to the beneficiary that they would not unreasonably delay

21  payment of the claim; they would timely, fairly and reasonably investigate the claim;  engage in

22  claims handling practices that comported with the standard of care and that were reasonable and fair;

23  they would communicate with plaintiff and discuss reasonable good faith offers given the facts and

24  evidence; that they would not violate the Covenant of Good Faith and Fair Dealing implicit in the

25  Policy of Insurance; that they would conduct a timely, proper, fair and complete investigation of the

26  accident and the injuries and plaintiff's claim; that they would not manufacture a genuine dispute,

27  when no such genuine dispute existed; and they would not, without good cause and a good faith

28  belief, require Plaintiff to arbitrate.

Notice of Removal Exh. A 014

36.     In truth and fact at said time, when Plaintiff and other identified insureds entered into the standardized insurance policy contract with defendants and each of them, Defendants did not intend to pay any Plaintiff all sums that the uninsured or underinsured or hit and run motorist would be legally liable to pay, and in truth and fact, Defendants, and each of them, at that time, intended to pay the Plaintiff far less than the sum to which the Plaintiff would be entitled; and in truth and fact, Defendants, and each of them, did not intend to pay reasonably and promptly any sums due Plaintiff, but intended to delay unreasonably any sums to which Plaintiff would be entitled, even including forcing Plaintiff to arbitrate unnecessarily in order to obtain the money which was legitimately due; and in truth and fact, Defendants, and each of them, at that time, intended to violate the Covenant of Good Faith and Fair Dealing implicit in the Policy of Insurance by unreasonably undervaluing the amount due Plaintiff, and by having their agents make unreasonably low settlement offers known as "low ball" and "nuisance value" offers, or no offer at all, and refusing to pay medical payment sums long overdue unless Plaintiff would accept an unreasonably lowball offer as complete settlement; and in truth and fact at said time, Defendants, and each of them, did not intend to conduct a proper and fair investigation, but intended to twist the facts of the accident in favor of Defendants, and each of them; and would use tactics to justify dragging out the claims process and forcing Plaintiff to litigate in Bad Faith to protect his rights under the insurance contract.

37.     At the times Defendants, and each of them, entered into the standardized Policy of Insurance Contract, and each date and time they renewed the policy.  At all relevant times, defendants, and each of them, including PROGRESSIVE, undertook obligations under the policy without intent to perform them, thus misrepresenting defendant insurance carrier and its employees/agents' state of mind **within the policy terms**, duties and obligations as promised **within the insurance policy**. Defendants, and each of them (including PROGRESSIVE & TAMER ABULEBDA "ADJUSTER"), by issuing the policy **925092094**, impliedly represents its then-willingness to perform those express and implied contract terms.  No additional affirmative representations that it will be performed need be shown.  Defendants, by engaging in the wrongful acts and omissions described throughout this complaint, including its claims handling practices, its' post-claim practices related to the claims handling process evidenced through subsequent conduct, including improper claims investigation,

Notice of Removal Exh. A 015

1 processing, evaluation and payment and related delays and deficiencies, by defendants and each of
2 them, an intent not to perform promises under the insurance policy contract.  Defendants <u>delayed</u>
3 <u>payment</u> based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking
4 to reduce the amounts legitimately payable and numerous other tactics, may breach the implied
5 covenant because they <u>frustrate</u> the insured's right to receive the benefits of the contract in 'prompt
6 compensation for losses.  ***Defendants and each of them had no intent to perform its express and***
7 ***implied policy contract promises made <u>within the policy terms</u> at the time the policy was drafted,***
8 ***sold and issued to plaintiff/insured.*** (see, *Beckwith v. Dahl* (2012) 2005 Cal. App. 4th 1039 ["*the*
9 *falsity of [a] promise is sufficiently plead with a general allegation the promise was made without*
10 *intention of performance.*" (*Id.* at 1060)]).

11 38.     The nature of fraud and **fraudulent deceit** involving a standardized form adhesion insurance
12 contract or *form contract-insurance policy* arises from Defendants' that offered to Plaintiff and other
13 named insureds on plaintiff's PROGRESSIVE  automobile insurance policy, and other members of
14 the general public the insurance policy at issue, on a take-it-or-leave-it basis.  At all times relevant
15 herein, there was no intent to by the insurer to perform on contractual promises made **within the**
16 **insurance policy terms** at the time the policy was issued to plaintiff and other insureds covered by
17 the policy.     PROGRESSIVE and TAMER ABULEBDA "ADJUSTER",  has engaged in
18 promissory fraudulent deceit under California law pursuant to *Miller v. National American Life Ins.*
19 *Co. of California* (1976) 54 Cal App. 3d. 331; *Wetherbee v. United Ins. Co. of America* (1968) 265
20 Cal App. 2d. 932; *Civil Code* sections 1709, 1710  subdv. (4) and other California law.

21 39.     The fraudulent misrepresentations and false promises made by Defendants and each of them,
22 including TAMER ABULEBDA "ADJUSTER" at the time the policy was issued to cover Plaintiff
23 and at each renewal period, were made as express and implied terms and obligations in the insurance
24 policy and those express and implied at law that become part of the insurance policy.  Pursuant to
25 *Archdale v. American Intern. Special Lines Ins. Co.* (2007) 154 Cal. App. 4th 449; *Comunale v.*
26 *Traders General Ins. Co.* (1958) 50 Cal. 2d 654, 658-659; *Brehm v. 21st Century Ins. Co.* (2008) 166
27 Cal. App. 4th 1225, .*California Insurance Code* and other California law, these included but are not
28 limited to:

13

COMPLAINT

Haleem v. Progressive Casualty Insurance Company, et al.

1      a) Obligations and duty by defendants and each of them of an obligation of good faith and

2 fair dealing toward insured, plaintiff;

3      b) An obligation and duty by Defendants, and each of them, would not do anything which

4 would injure the right of insured, plaintiff, to receive benefits of the agreement;

5      c) An obligation and duty by Defendants, and each of them, to give the interests of the

6 insured, plaintiff, at least as much consideration as it gives to its own interests, when determining

7 whether to settle with insured Plaintiff;

8      e) An obligation and duty of defendants and each of them to communicate with plaintiff to

9 honestly, diligently, fairly, timely, reasonably and thoroughly investigate and evaluate information

10 available with regard to insured-plaintiff's claim, and make timely and reasonable settlement offers to

11 plaintiff and act reasonably to resolve the claim and affirmative effort to discuss and resolve the

12 plaintiff's claim before an arbitration under the policy was necessary, so as to avoid further costs,

13 expense by plaintiff/insured (see, *Brehm v. 21st Century Ins. Co.* (2008) 166  Cal. App. 4th 1225,

14 142).

15      d) An obligation and duty of defendants, and each of them, to accept a reasonable settlement

16 offer of insured Plaintiff's claim;

17      e) An obligation and duty of defendants, and each of them, to accept a reasonable

18 settlement offer of insured plaintiff's claim without regard to such factors as the limits imposed by

19 the policy, a desire to reduce the amount of future settlements or a belief that the policy does not

20 provide insured/plaintiff coverage.

21 40.    Based on the existence of these duties and obligations, both express and implied as "promises"

22 from the insurance carrier within defendant's (non-negotiable, adhesion "form") insurance policy

23 contract, implied terms and express terms, the insured/plaintiff reasonably and justifiably relied on

24 these express and implied promises from defendants and each of them, when the policy was first

25 issued and at each and every renewal period for the plaintiff's policy.   The existence of these

26 promises made the adhesive and non-negotiable nature of the automobile insurance policy a realistic

27 and reasonable contract to enter for a mandatory public need for automobile insurance to drive a

28 motor vehicle within the State of California.

Notice of Removal Exh. A 017

1   41.    Defendants, and each of them, represented within the Policy's express, implied at law and

2   implied in fact policy terms and <u>promises</u>, to the policy holders, named insured's beneficiaries,

3   unnamed beneficiaries and permissive users of a vehicle under the Policy **925092094** (which included

4   plaintiff), with regard to uninsured and underinsured motorist coverage, that Defendants and each of

5   them, would do the following in the event of a claim: that Defendants, and each of them, would pay

6   to the beneficiary sums that the uninsured or underinsured motorist would be obligated to pay to the

7   beneficiary less any sums previously paid by the other motorist and that they would not unreasonably

8   delay payment of the claim; that they would not violate the Covenant of Good Faith and Fair Dealing

9   implicit in the Policy of Insurance; that they would conduct a timely, proper, reasonable and fair

10   investigation of the accident and the injuries; they would retain expert professionals to timely, fairly

11   and reasonably investigate plaintiff's UM/UIM **claim 18-4466239** during the claims handling

12   process, which defendants and each of them were obligated under the insurance policy contract to do;

13   they would negotiate in good faith with plaintiff as to a fair and reasonable settlement offer given the

14   facts and evidence, including facts and evidence that plaintiff provided defendants and each of them;

15   that they would not manufacture a genuine dispute, when no such genuine dispute existed; and they

16   would not, without good cause and good faith belief, require Plaintiff to unnecessarily arbitrate with

17   great financial and emotional cost to plaintiff.  In truth and fact at said time, Defendants, and each of

18   them, did not intend to pay any Plaintiff all sums the uninsured or underinsured motorist would be

19   legally liable to pay, and in truth and fact, Defendants, and each of them, *at that time*, intended to pay

20   the Plaintiff far less than the sum to which the Plaintiff would be entitled; and in truth and fact,

21   Defendants, and each of them did not intend to pay reasonably and promptly any sums due Plaintiff,

22   or to reasonably, fairly, time and in good faith, perform their duties and obligations pursuant to the

23   terms of the insurance policy contract, but intended to delay unreasonably any sums to which

24   Plaintiff would be entitled, engage in bad faith, unreasonable claims handling practices once a claim

25   was made on the policy as discussed throughout this complaint, and even including forcing Plaintiff

26   to file a lawsuit in bad faith in order to obtain the money which was legitimately due; and in truth and

27   fact, Defendants, and each of them, at that time, intended to violate the Covenant of Good Faith and

28   Fair Dealing in contract and in tort, implicit in the Policy of Insurance contract by unreasonably

Notice of Removal Exh. A 018

1  undervaluing the amount due Plaintiff, failing to timely, properly, reasonably and fairly investigate

2  the claim, and by having their agents make unreasonably low settlement offers known as "low ball"

3  and "nuisance value" offers, unless Plaintiff would accept an unreasonably lowball offer as complete

4  settlement; and in truth and fact at said time, Defendants, and each of them, did not intend from the

5  outset, to conduct a proper, timely and fair, complete investigation, or make or communicate any

6  reasonable and fair good faith settlement offers to plaintiff, but intended to retain only expert

7  witnesses for the accident facts, who they knew would attempt to twist the facts of the accident in

8  favor of Defendants, and each of them, and would retain physicians and other experts and expert

9  witnesses, including those identified herein,  at a time period indicating defendants' unreasonable,

10  unfair and bad faith UM/UIM claims handling practices and bad faith conduct, who defendants knew

11  would minimize any of Plaintiff's injuries, even if they knew themselves that they were much

12  greater; and would use the findings of such insincere experts to justify dragging out the claims

13  process and/or forcing an unnecessary arbitration that would expose plaintiff to much financial cost

14  and emotional stress.

15  42.    Thereafter, pursuant to their intentions to breach the Policy of Insurance, when Plaintiff made

16  his claim for benefits, Defendants, and each of them, in accordance with their scheme to deprive him

17  of the benefits of the policy, did, and omitted to do, the acts described throughout this complaint,

18  including but not limited to:

19      a) Refusing to pay Plaintiff the amount the underinsured motorist was legally liable to pay,

20         but offered only half of the $100,000 policy, $50,000 settlement, which Defendants tendered.

21      b) Unreasonably delaying, withholding and making offers, and only paying anything after a

22         harsh letter from Plaintiff's counsel threating a lawsuit in bad faith;

23      c) Unreasonably conducting an improper, untimely and unfair investigation at a timeframe

24         which also indicated unreasonable, unfair, and bad faith claim investigation and handling and

25         retention of a claim expert witness investigation who defendants knew were retained only to

26         twist the facts of the accident and wrongfully and unreasonably minimize the severity of

27         Plaintiff's injuries and dispute UM/UIM liability where no genuine dispute existed (see,

28         *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App. 4th 1225;

16
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

1    d)  Failing to negotiate in good faith and communicate with plaintiff a fair, reasonable and

2    timely settlement payment offer;

3    e)  By failing to settle and pay plaintiff's UM/UIM claim and no-fault Medical

4    payments claim in a timely and prompt manner and instead withheld payment of these

5    claim benefits until plaintiff had sent Defense a letter threatening a Bad Faith Law Suit;

6    f)  Unreasonably, willfully and intentionally investigate, evaluate and handle and discuss

7    plaintiff's claim so that no agreement to settle the claim before the cost and expense of a

8    UM/UIM  Bad Faith Law suit would be imposed on plaintiff, would be realistically possible

9    (see, *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App. 4th 1225, 1242);

10   g)  Forcing an unnecessary and costly Bad Faith Lawsuit on Plaintiff when they knew that

11   Plaintiff was entitled to most or all the remaining policy limits of $100,000.00;

12   h)  Refusing to timely, fairly and reasonably pay Plaintiff all of his no-fault, medical payment

13   benefits under the policy.

14   43.  All such aforementioned acts, omissions and representations constituted **"fraudulent deceit"** as

15   defined in *Civil Code* sections 1709 and 1710(4) and California case law.  Defendants and each of

16   them, willfully deceived Plaintiff,  with intent to induce Plaintiff to alter his position so as to buy,

17   accept and/or rely on the Defendants' insurance policy contract terms, obligations, duties and

18   coverage during his time of calamity, which was offered by Defendants and each of them, to protect

19   plaintiff and other insureds within the insurance policy contract, pursuant to the express, implied in

20   fact and implied at law policy terms and promises of the policy and assuming such terms, promises

21   and obligations stated throughout this complaint would be carried out as stated in the insurance policy

22   contract and those terms, promises, duties and obligations required by *Insurance Code* Sections

23   11580.2, *et seq.*, 790.03 *et seq.*, and other California law.

24   44.      Pursuant to *Civil Code* sections 1710(4) and 1709, *Miller v. National American Life Ins. Co.*

25   *of California* (1976) 54 Cal App. 3d. 331; *Wetherbee v. United Ins. Co. of America* (1968) 265 Cal

26   App. 2d. 932, Defendants, and each of them including TAMER ABULEBDA made **"false**

27   **promises"** in the standardized insurance policy contract because Defendants, and each of them,

28   entered into the agreement each time, including prior to and on October 15, 2018 (date the insurance

Notice of Removal Exh. A 020

1  policy went into effect), to follow the policy's terms and obligations of the agreement **but instead,**

2  **actually had the intention of performing only to the extent that would be to Defendants' benefit**

3  **such that Defendants intended the contract be carried only in such ways as to be to the**

4  **Insurance Company and Defendants' benefit and not in such ways to be to the policy**

5  **holders/insured's benefit.** Thus Defendants, and each of them, through the insurance policy

6  contract, made promises, to Plaintiff and other identified insureds, without any intention of

7  performing them each time they renewed the insurance policy.

8  45.    The aforementioned insurance policy contract's promises and representations to Plaintiff and

9  other identified policy insureds, by Defendants, and each of them, were deceptive and in fact false

10  and untrue when made to Plaintiff and the other insureds named as referenced with the insurance

11  policy contract prior to and at the time of policy issuance.

12  46.    The aforementioned promises and representations by Defendants, and each of them, were in

13  fact material.

14  47.    Defendants and each of them knew the promises and representations were false and untrue

15  when they were made within the policy contract terms and obligations both express and implied, and

16  would never be carried out in compliance with the insurance policy contract implied and express

17  terms. At all times relevant herein, Defendants, and each of them including TAMER ABULEBDA

18  "ADJUSTER" and PROGRESSIVE, engaged in an absolute unwillingness even to attempt (a

19  promised) performance. Defendants made the promises and representations intentionally and

20  willfully. Defendants, and each of them, misrepresented their own state of mind at the time the

21  promises and representations were made within the insurance policy contract as both express and

22  implied within the policy language and obligations under California law. 50.    Pursuant to *Miller v.*

23  *National American Life Ins. Co.* (1976) 54 Cal. App. 3d 331, at all times defendants and each of them

24  acted to induce plaintiff/insured to alter his position and enter the insurance policy contract and

25  renewal of such policy contract. Plaintiff/insured did change his position to his detriment in reliance

26  on the policy promises. Such reliance was reasonable by plaintiff/insured. At all times the

27  defendants' making of the policy promises **within the policy contract** were with an intent to deceive

28  plaintiff/insured. At all times the defendants' making of the insurance policy contract promises

Notice of Removal Exh. A 021

1    were made with the intent to induce the plaintiff/insured to whom it was made **within the policy**

2    **contract**, *to enter* into the transaction and pay for the insurance policy contract and renew such

3    policy contract each and every time the policy was up for renewal.

4    48.    All fraudulent deceit and false promises arose out of the implied and express terms of the

5    adhesive insurance policy contract entered into between plaintiff/insured and defendant,

6    PROGRESSIVE  and Does 1 to 100.

7    49.    Plaintiff and other identified insureds on the insurance policy contract, reasonably and/or

8    justifiably relied on the promises and representations of Defendants, and each of them, when plaintiff

9    and other identified insureds within the policy, to his detriment, considered purchasing or renewing

10   the insurance policy contract and did purchase and renew the policy to cover him for automobile

11   losses, with defendants and each of them.

12   50.    Plaintiff was proximately caused detriment, damage and loss in that he paid policy premiums

13   and in return defendants, and each of them, did not perform on their contractual promises and

14   representations.

15   51.    Defendants knew their promises, representations, duties and obligations under the insurance

16   policy contract and those implied in the contract, both in fact, and under California law, including but

17   not limited to *Insurance Code* section 11850.2 *et seq*.,  but failed to disclose and/or concealed that

18   Plaintiff and other identified insureds would be subjected to wrongful, tortious, fraudulent, malicious

19   and oppressive intentional and willful failure to perform and deliver on the contractual duties and

20   promises at the time plaintiff entered into the insurance policy contract with defendants and each of

21   them, including prior to and on or about August 29, 2015 (the active start date of the automobile

22   insurance policy and coverage at issue).

23   52.    Further, the standardized automobile insurance policy contract was an adhesion contract as

24   defined under California law.  The insurance policy contract was offered on a "take it or leave it

25   basis," to plaintiff and other policy identified insureds, as well as including the general public.

26   Plaintiff and other insureds on the policy were members of the general public who were offered this

27   insurance policy contract by defendants and each of them (including PROGRESSIVE).   Plaintiff

28   and other insureds, as well as the general public, were not in a position or could negotiate the terms of

Notice of Removal Exh. A 022

1  the insurance policy agreement. Plaintiff and other insureds were compelled to adhere to all of the

2  policy's terms and conditions as drafted by PROGRESSIVE.  At all times relevant therein plaintiff

3  and other insureds, on the policy nor other members of the general public, were entitled to nor could

4  alter or modify the terms of the PROGRESSIVE automobile insurance policy by face to face

5  negotiations or otherwise.

6  53.    The automobile insurance policy was required and mandated under California law for all

7  drivers and owners of automobiles to have and pay for so they may drive in California.  This

8  automobile insurance policy is a public need and requirement under California law.   The terms of

9  the insurance policy agreement were nearly identical to all other entities that offer similar automobile

10  insurance policy coverage, thus there were no other reasonable insurance policy coverage alternatives

11  in the marketplace.

12  54.    At all times, by the mere issuance of the insurance policy to plaintiff/insured, defendants

13  and Does 1 to 100, as the insurer, *impliedly* represented its willingness to perform under the

14  policy express and implied terms. No additional, affirmative representation that it will perform

15  need be shown between plaintiff and defendants. *Miller v. National American Life Ins. Co. of*

16  *Calif.* (1976) 54 Cal.App.3d 331, 338.

17  55.    As a direct and proximate result of the false promises, fraudulent deceit and concealment by

18  Defendants, and each of them, of their obligations under the insurance policy contract, Plaintiff has

19  been damaged as follows:

20        a) Plaintiff was forced to proceed with binding arbitration and incur the associated costs

21  and emotional distress associated with such proceedings including attorneys and expert fees and

22  he was denied benefits due under the policy in a time of medical need, and physical pain;

23        b) Plaintiff was forced to suffer other economic and consequential damages as referenced herein

24  and throughout this complaint in an amount to be shown at trial.

25  56.    At all times relevant herein, defendants and each of them, intended to injure, harm and damage

26  plaintiff.    Defendants, and each of them, intended the consequences described throughout this

27  complaint and that were substantially certain to result from its conduct, acts and omissions.

28

Notice of Removal Exh. A 023

1    57.    The conduct of Defendants, and each of them, described in this complaint of deliberately and

2    calculatingly failing to provide the compensation which they knew was due to Plaintiff, scheming to

3    conspire and defraud Plaintiff, and committing actual fraudulent deceit against Plaintiff, and further

4    intentionally inflicting emotional distress upon Plaintiff, offering no settlement at all in light of

5    compelling medical evidence supporting that Plaintiff was entitled to the full policy benefits, while

6    well knowing their policy holder and insured was entitled to policy limits constitutes malice, fraud

7    and oppression under California *Civil Code* section 3294 and *Delgado v. Heritage Life Ins.*

8    *Co.*,(1984) 157 Cal. App. 3d 262, .in that it was done with the intent to vex, injure, or annoy and with

9    willful and conscious disregard of the Plaintiff's rights and safety of plaintiff and deliberately in bad

10   faith, to deny him the prompt, and reasonable policy claim benefits to which he was entitled under the

11   insurance policy.  Defendants, and each of them, .were aware of the consequences of its' conduct,

12   acts, omissions and representations and willfully and deliberately failed to avoid these consequences

13   to plaintiff/insured's detriment, damages and loss.  Defendants' acts, omissions and representations

14   showed a conscious course of conduct, firmly grounded in established company policy.  Further

15   defendants engaged in oppression in that they subjected plaintiff/an insured to cruel and unjust

16   hardship in conscious disregard of his rights.

17   58.    The acts, omissions and representations were all despicable.  Defendants, and each of them

18   conduct, acts, omissions and representations were mean, vile, base or contemptible that it would be

19   looked down upon and despised by reasonable people.  At all relevant times, Defendants, and each of

20   them, including insurance company's agents, employees, officers, directors and managing agents had

21   advanced knowledge of their employees, contractors, agents, managing agents, officers, directors

22   unfitness and acted with a conscious disregard of the rights and safety of plaintiff/an insured.   At all

23   relevant times, Defendants, and each of them, including insurance company's agents, employees,

24   officers, directors and managing agents acted with and had advanced knowledge of their employees,

25   contractors, agents, managing agents, officers, directors acts, omissions and representations or

26   thereafter ratified the wrongful, intentional, willful, unreasonable, reckless, careless, negligent,

27   oppressive, malicious, fraudulent, tortious and bad faith acts, omissions and representations of the

28

21
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

1   wrongful conduct, acts, omissions and representations of defendants and each of them, as described

2   throughout this complaint and/or ratified such wrongful acts, omissions and representations.

3   59.    All the aforesaid acts, omissions and representations were performed in an effort to discourage

4   Plaintiff from seeking the compensation due to him at a time Defendants, and each of them, knew

5   that the Plaintiff was financially vulnerable, and during his time of calamity. Thus, Plaintiff is entitled

6   to punitive and exemplary damages pursuant to *Civil Code* section 3294 and other California law, in

7   an amount appropriate to punish and make an example of Defendants, and each of them.

8

9   ////

10

11   ////

12

13   ////

14

15

16   ////

17

18

19   ////

20

21

22   ////

23

24

25

26   ////

27

28

22
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

PRAYER

WHEREFORE, Plaintiff prays for damages as against Defendants, and each of them, as follows:

  A. For general pecuniary and compensatory damages for breach of the implied covenant of good faith and fair dealing including, but not limited to, injuries resulting from humiliation, mental anguish and emotional distress and litigation expenses and costs according to proof;

  B. For compensatory and consequential damages according to proof for breach of contract;

  C. For compensatory and consequential damages according to proof on all accounts;

  D. For reasonable attorneys' fees in obtaining policy benefit incurred herein; for reasonable additional attorneys' fees; expert witness fees; incurred in the hit and run motorist litigation arising from the breach of covenant of good faith and fair dealing *in tort* (bad faith) cause of action;

  E. For prejudgment interest in an amount to be proved at time of trial;

  F. For costs of suit incurred herein;

  G. For punitive and exemplary damages in an amount sufficient to punish, deter and make an example of Defendants, and each of them, as to the breach of the covenant of good faith and fair dealing *in tort* (bad faith) cause of action;

  H. For punitive and exemplary damages in an amount sufficient to punish, deter and make an example of Defendants, and each of them as to the fraud cause of action.

  I. For such other and further relief as this Court may deem just and proper.

Dated: April 12, 2021     LAW OFFICES OF GENE J. GOLDSMAN


        By: _____
           Gene J. Goldsman, Esq.
           Attorney for Plaintiff,
           AHMED HALEEM.

23
COMPLAINT
Haleem v. Progressive Casualty Insurance Company, et al.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):
Gene J. Goldsman, Esq.                                    SBN: 76554
Law Offices of Gene J. Goldsman
501 Civic Center Drive West, Santa Ana, CA 92701
TELEPHONE NO: (714) 541-3333          FAX NO: (714) 541-0456
ATTORNEY FOR (Name): Ahmed Haleem

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS: 24405 Amador Street
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME: Haleem v. Progressive, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: HG21107078 |
|---|---|---|
| [X] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: _____ DEPT: _____ |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

**2.** This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
**4.** Number of causes of action (specify): (3) Breach of Covenant of Good Faith and Fair Dealing; Breach of Contract; Fraud
**5.** This case [ ] is   [X] is not   a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 12, 2021
Gene J. Goldsman, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Page 1 of 2

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

Notice of Removal Exh. A 028



## Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

### What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program:** Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

ADR Info Sheet.Rev. 12/15/10

*Page 1 of 2*

Notice of Removal Exh. A 029

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

• *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA 94702-1612
Telephone: (510) 548-2377    Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities -- **S**ervices that **E**ncourage **E**ffective **D**ialogue and **S**olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035    Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100    Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

Notice of Removal Exh. A 030

ALA ADR-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                          FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY

STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |
|---|---|

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 24405 Amador Street, Hayward, CA 94544 or Fax to (510) 267-5727.

1. Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

   Date:                          Time:                          Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (check one):

   ☐ Court mediation        ☐ Judicial arbitration
   ☐ Private mediation      ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____     ▶ _____
(TYPE OR PRINT NAME)              (SIGNATURE OF PLAINTIFF)

Date:

_____     ▶ _____

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

(TYPE OR PRINT NAME)                     (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

**ALA ADR-001**

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF DEFENDANT)

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

Notice of Removal Exh. A 032